# EXHIBIT 1:
# SPECIAL ENTRY OF APPEARANCE AND MOTION TO DISMISS OF DEFENDANT MATTHEWS TRENCHING
# CJ-2026-515 | OKLAHOMA COUNTY

FILED
DISTRICT COURT
OKLAHOMA COUNTY, OKLAHOMA
April 15, 2026 4:06 PM
RICK WARREN, COURT CLERK
Case Number CJ-2026-515

DWD

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

ANTHONY TRUPIA,

Plaintiff,

v.

CITY OF OKLAHOMA CITY, a municipal corporation; OKLAHOMA CITY WATER UTILITIES TRUST (OCWUT), a public trust; CHRIS BROWNING, individually and in his official capacity as Utilities Director and General Manager of OCWUT; JAMES D. COUCH, individually and in his official capacity as Chairman of OCWUT and Independent Trustee; DAVID HOLT, individually and in his official capacity as Mayor of Oklahoma City and OCWUT Trustee; MARK STONECIPHER, individually and in his official capacity as Councilmember and OCWUT Vice Chairman/Surrogate Trustee; CRAIG FREEMAN, individually and in his official capacity as City Manager and OCWUT Trustee; DON E. NOBLE, individually and as Owner of CIMARRON CONSTRUCTION CO., LLC; GARY MATTHEWS, individually and as Owner of MATTHEWS TRENCHING CO., INC.; RICK THOMPSON, individually and as Owner of WINN CONSTRUCTION, INC.; CAROLLO ENGINEERS, INC.; BLACK & VEATCH CORPORATION; CROSSLAND HEAVY CONTRACTORS, INC.; ARCHER WESTERN CONSTRUCTION, LLC; WYNN CONSTRUCTION CO., INC.; CIMARRON CONSTRUCTION CO., LLC; MATTHEWS TRENCHING CO., INC.; KRAPFF-REYNOLDS CONSTRUCTION COMPANY,

Defendants.

Case No. CJ-2026-515
Judge Don Andrews

**SPECIAL ENTRY OF APPEARANCE AND MOTION TO**
**<u>DISMISS OF DEFENDANT MATTHEWS TRENCHING CO., INC.</u>**

COMES NOW by special entry of appearance Defendant, Matthews Trenching Co., Inc. ("Matthews Trenching"), by and through its counsel of record, Maurice Woods II, PLLC, pursuant to 12 O.S. § 2012(B)(6), hereby move the Court to dismiss Plaintiff's *First Amended Complaint* (Ex. "A") against it for failure to state a claim upon which relief can be granted and, in support, state as follows:

## I. INTRODUCTION

Pro se Plaintiff has drafted a complaint arising out of his alleged "unexplained escalations in monthly water bills from the City/OCWUT." (First Amended Complaint, ¶ 23, Ex. A.) Subsequently, it was allegedly "reveal[ed] that Plaintiff's house was incorrectly hooked to a defective city connection." (*Id.*, ¶ 27.) Plaintiff alleges the "defect directly resulted in mold growth under the home, devaluing the property, requiring remediation, and causing personal injuries including sinus and ear pain from mold exposure." (*Id.*) Plaintiff further elaborates:

> Had Defendants accurately tracked and billed "returned water" (contrary to their representations), conducted proper initial inspections, or responded promptly to notices, Plaintiff could have identified and rectified the defect a full year earlier, avoiding over $2,500 in overbilling, crawlspace flooding, mold infestation, property devaluation (estimated $10,000+ in remediation), and ongoing health effects.

(*Id.*, ¶ 28.)

Plaintiff's complaint continues on with several paragraphs under the heading of "**Systemic Negligence and Infrastructure Failures**." (*Id.*, ¶¶-29-33.) Matthews Trenching is not mentioned in these paragraphs. Plaintiff next makes a variety of allegations under the heading "**Financial Beneficiaries and Conflicts of Interest**." (*Id.*, ¶¶ 34-39.) Here, Plaintiff makes the allegation that "Contractors like … Matthews Trenching (high-volume work) … profit directly from failures, incentivized by the system." (*Id.*, ¶ 37.)

Plaintiff does not allege that Matthews Trenching in any way incorrectly hooked Plaintiff's house up to the city connection.

Plaintiff's first of three causes of action involving Matthews Trenching is for negligence and is stated, in full, as follows:

> **Count I: Negligence (Against All Defendants)**
>
> 42. Defendants owed Plaintiff a duty to maintain safe, accurate water utility services, inspect infrastructure properly, respond promptly to notices, and mitigate known risks like transients and defects.
>
> 43. Defendants breached this duty through defective hookups, delayed inspections, misrepresentations of billing accuracy, failure to address systemic breaks (1,101 in FY2025), and operational decisions causing surges.
>
> 44. These breaches proximately caused Plaintiffs overbilling ($2,500+), property damage (flooding, mold, $10,000+ remediation), and personal injuries (sinus/ear pain).
>
> 45. Individual Defendants acted with willful and wanton negligence, piercing GTCA immunities.

(*Id.*, p. 8.)

Plaintiff's second cause of action involving Matthews Trenching is for unjust enrichment and is stated, in full, as follows:

> **Count V: Unjust Enrichment (Against All Contractor Defendants)**
>
> 50. Contractors profited from the "Break-Fix" cycle, unjustly enriched by systemic failures they helped perpetuate, at Plaintiff's expense as a ratepayer funding repairs.

(*Id.*, p. 9.)

Finally, Plaintiff's third cause of action involving Matthews Trenching is for unjust enrichment and is stated, in full, as follows:

> **Count VIII: Conflict of Interest and Civil Conspiracy (Against All Individual and Contractor Defendants)**
>
> 53. Defendants conspired through revolving doors, sponsorships, appointments, and contracts to maintain the profitable failure cycle, breaching fiduciary duties and causing harm.

(*Id.*, p. 9.)

## II. ARGUMENTS AND AUTHORITY

### A. Plaintiff Fails to State a Cause of Action for Negligence

"The material elements of a negligence claim are: (1) a duty owed by the defendant to protect the plaintiff from injury; (2) a failure to perform that duty; and (3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care." *Marshall v. City of Tulsa*, 2024 OK 78, ¶ 22, 558 P.3d 1220, 1228 (citing, *Bird v. Pruett's Food, Inc.*, 2023 OK 92, ¶ 7, 536 P.3d 578, 581). Importantly, "[w]hether the defendant owed the plaintiff a duty of care is a question of law for the court." *Id.* (citing, *Delbrel v. Doenges Bros. Ford, Inc.*, 1996 OK 36, ¶ 7, 913 P.2d 1318, 1320). "If the defendant did not owe a duty of care to the plaintiff, there can be no liability for negligence as a matter of law." *Id.*

Here, Plaintiff alleges: "Defendants owed Plaintiff a duty to maintain safe, accurate water utility services, inspect infrastructure properly, respond promptly to notices, and mitigate known risks like transients and defects." (First Amended Complaint, ¶ 42, Ex. A.) Despite Plaintiff's allegation to the contrary, the law imposes no such duties on the private contractor Matthews Trenching. Matthews Trenching owes Plaintiff no duty to maintain safe water utility services; no duty to maintain accurate water services; no duty to inspect infrastructure; no duty to respond to notice, and; no duty mitigate known risks to water utility services. Accordingly, not having a duty owed to Plaintiff, Plaintiff's cause of action for negligence against Matthews Trenching fails as a matter of law.

## B. Plaintiff Fails to State a Cause of Action for Unjust Enrichment

"Oklahoma defines unjust enrichment as '(1) the unjust (2) retention of (3) a benefit received (4) at the expense of another.'" *Orthman v. Premiere Pediatrics*, PLLC, 2024 OK CIV APP 7, ¶ 30, 545 P.3d 124, 136 (quoting, *Oklahoma Dep't of Sec. ex rel. Faught v. Blair*, 2010 OK 16, ¶ 22, 231 P.3d 645, 658). Here, Plaintiff alleges: "Contractors profited from the 'Break-Fix' cycle, unjustly enriched by systemic failures they helped perpetuate, at Plaintiff's expense as a ratepayer funding repairs." (First Amended Complaint, ¶ 450, Ex. A.) Plaintiff is attempting to state a cause of action against Matthews Trenching based on the alleged political failures of the City of Oklahoma City and the Oklahoma City Water Utilities Trust. Plaintiff's allegation that such occurred at Plaintiff's expense as one of hundreds of thousands of ratepayer funding repairs is insufficient to establish the fourth element "at the expense of another." Plaintiff is not attempting to assert a cause of action on his own behalf so much as he is attempting to enforce a public right without authority in support (discussed further subsequently). Taking Plaintiff's allegations as true, Plaintiff is not party to enforce such a cause of action against Defendants herein. Plaintiff has failed to state a *personal* cause of action for unjust enrichment against Matthews Trenching as a matter of law.

## C. Plaintiff Fails to State a Cause of Action for Civil Conspiracy

"A civil conspiracy consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means." *Brock v. Thompson*, 1997 OK 127, ¶ 39, 948 P.2d 279, 294. "There can be no civil conspiracy where the act complained of and the means employed are lawful." *Id*. "Standing alone, civil conspiracy does not create liability; an underlying tortious act is required." *Growtech Indus., LLC v. Mary Mechanix, L.L.P.*, 5:21-CV-841-D, 2022 WL 4473622, at *7 (W.D. Okla. Sept. 26, 2022) (citing, *Brock*, *id*.) Here, Plaintiff's claims for

negligence and unjust enrichment fail (*supra*) and, therefore, Plaintiff is deprived of the unlawful act/means requirement of civil conspiracy with regard to his personal claim for civil conspiracy. Following the failure of his claims for negligence and unjust enrichment, Plaintiff's claim for civil conspiracy fails as a matter of law.

**C. Plaintiff Lacks Standing to Bring the Claims Described in his Complaint**

"Standing is a preliminary or threshold issue adjudicated prior to an examination of the merits." *Hunsucker v. Fallin*, 2017 OK 100, ¶ 3, 408 P.3d 599, 602. In order to establish standing, "[a] plaintiff must have suffered a concrete, particularized injury in fact; there must be a causal connection between the injury and the challenged conduct; and it must be likely that the injury can be redressed by a favorable decision." *Tobacco Settlement Endowment Tr. Fund v. Stitt*, 2026 OK 1, ¶ 13, 583 P.3d 280, 287. More specifically, "the Supreme Court has rejected standing based only on 'a generalized grievance shared in substantially equal measure by all or a large class of citizens.'" *O'Rourke v. Dominion Voting Sys., Inc.*, 21-1161, 2022 WL 1699425, at *2 (10th Cir. May 27, 2022) (quoting, *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Plaintiff's allegations of "systemic negligence," "infrastructure failures," "financial beneficiaries" and "conflicts of interest" fall short of satisfying the requirement of particularized injury and a sufficient causal connection between Plaintiff's allegedly defective hookup and the challenged conduct of the parties. Further, there is no allegation that any direct action by Matthews Trenching proximately resulting in damage to Plaintiff. Plaintiff lacks standing to bring the gravamen of his complaint for governmental mismanagement.

WHEREFORE by special entry of appearance Defendant, Matthews Trenching Co., Inc., respectfully requests the Court to dismiss Plaintiff's *First Amended Complaint* against it, with

prejudice, for having failed to state a claim against Matthews Trenching. and for all other and further relief the Court deems just and equitable.

Respectfully submitted,

MAURICE G. WOODS, II OBA #16582
DON W. DANZ OBA #14607
DEBORAH RUSSELL OBA# 35480
MAURICE WOODS, II PLLC
4811 Gaillardia Parkway, Suite 100
Oklahoma City, OK 73142
Phone: (405) 628-0000
Facsimile: (405)628-0001
MW@mwoodslaw.com
don@mwoodslaw.com
deborah@mwoodslaw.com
***Attorneys for Defendant***
***Matthews Trenching Co., Inc.***

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was served by:

☒ Email
☐ Fax
☒ First Class Mail
☐ Certified Mail, Return Receipt Requested
☐ Hand Delivery

upon the following on the 15th day of April, 2026:

Anthony Trupia
Pro Se
605 SE 21st St.,
Oklahoma City, OK 73129
516-984-0142, Trupiaar@gmail.com

MAURICE G. WOODS, II

# EXHIBIT A: FIRST AMENDED COMPLAINT

IN THE DISTRICT COURT IN AND FOR OKLAHOMA COUNTY

STATE OF OKLAHOMA

**Case No. CJ-2026-515**

**ANTHONY TRUPIA**, an individual,

Plaintiff,

v.

**CITY OF OKLAHOMA CITY**, a municipal corporation;

**OKLAHOMA CITY WATER UTILITIES TRUST (OCWUT)**, a public trust;

**CHRIS BROWNING**, individually and in his official capacity as Utilities Director and General Manager of OCWUT;

**JAMES D. COUCH**, individually and in his official capacity as Chairman of OCWUT and Independent Trustee;

**DAVID HOLT**, individually and in his official capacity as Mayor of Oklahoma City and OCWUT Trustee;

**MARK STONECIPHER**, individually and in his official capacity as Councilmember and OCWUT Vice Chairman/Surrogate Trustee;

**CRAIG FREEMAN**, individually and in his official capacity as City Manager and OCWUT Trustee;

**DON E. NOBLE**, individually and as Owner of CIMARRON CONSTRUCTION CO., LLC;

**GARY MATTHEWS**, individually and as Owner of MATTHEWS TRENCHING CO., INC.;

**RICK THOMPSON**, individually and as Owner of WINN CONSTRUCTION, INC.;

**CAROLLO ENGINEERS, INC.;**

**BLACK & VEATCH CORPORATION;**

**CROSSLAND HEAVY CONTRACTORS, INC.;**

**ARCHER WESTERN CONSTRUCTION, LLC;**

**WYNN CONSTRUCTION CO., INC.;**

**CIMARRON CONSTRUCTION CO., LLC;**

**MATTHEWS TRENCHING CO., INC.;**

**KRAPFF - REYNOLDS CONSTRUCTION COMPANY**, Defendants.



EXHIBIT A

## FIRST AMENDED COMPLAINT

COMES NOW the Plaintiff, Anthony Trupia, pro se, and for his Complaint against the above-named Defendants, states and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 12 O.S. § 133, as the claims arise under Oklahoma common law and statutes, including but not limited to negligence, nuisance, breach of contract, misrepresentation, unjust enrichment, and violations of the Oklahoma Governmental Tort Claims Act (51 O.S. § 151 et seq., "GTCA"), the Oklahoma Open Records Act (51 O.S. § 24A.1 et seq., "ORA"), and constitutional takings under Article II, § 24 of the Oklahoma Constitution. The amount in controversy exceeds the jurisdictional minimum.

2. This Court has personal jurisdiction over all Defendants, as each Defendant is either a resident of Oklahoma, conducts business in Oklahoma, or has committed tortious acts within Oklahoma causing injury to Plaintiff in Oklahoma County.

3. Venue is proper in Oklahoma County pursuant to 12 O.S. § 134, as the cause of action arose in Oklahoma County, the City of Oklahoma City (the "City") is located in Oklahoma County, and a substantial part of the events or omissions giving rise to the claims occurred in Oklahoma County.

## PARTIES

4. Plaintiff Anthony Trupia is an individual residing in Oklahoma City, Oklahoma County, Oklahoma, and is a ratepayer and customer of the City's water utility services.

5. Defendant City of Oklahoma City is a municipal corporation organized under the laws of Oklahoma, responsible for the provision of water utility services to residents, including Plaintiff, and is the ultimate overseer of the water infrastructure system at issue.

6. Defendant Oklahoma City Water Utilities Trust (OCWUT) is a public trust created under Oklahoma law, operating as a distinct legal entity that holds the City's water utility assets, issues revenue bonds, and manages the water utility as a proprietary enterprise for profit, thereby subjecting it to liability outside the GTCA's immunities for proprietary functions.

7. Defendant Chris Browning is an individual residing in Oklahoma, serving as Utilities Director for the City and General Manager of OCWUT, with direct operational responsibility for the water system's design, maintenance, and operations, including decisions exacerbating hydraulic transients and infrastructure failures.

8. Defendant James D. Couch is an individual residing in Oklahoma, serving as Chairman and Independent Trustee of OCWUT, a licensed Professional Engineer, and former City Manager (2000–2018) and Water/Wastewater Director, who architected the current utility strategy and possesses technical knowledge of hydraulic surge risks.

9. Defendant David Holt is an individual residing in Oklahoma, serving as Mayor of Oklahoma City and OCWUT Trustee, with appointment powers over trustees and oversight of capital projects benefiting the vendor network at issue.

10. Defendant Mark Stonecipher is an individual residing in Oklahoma, serving as City Councilmember (Ward 8) and OCWUT Vice Chairman/Surrogate Trustee, acting as a political enforcer for utility policies and rate hikes.

11. Defendant Craig Freeman is an individual residing in Oklahoma, serving as City Manager and OCWUT Trustee, acting as a procedural gatekeeper for technical recommendations leading to the failures.

12. Defendant Don E. Noble is an individual residing in Oklahoma, owner of CIMARRON CONSTRUCTION CO., LLC, a primary emergency repair contractor profiting from the "Break-Fix" cycle, and a mayoral appointee to the Board of Adjustment, creating a conflict of interest.

13. Defendant Gary Matthews is an individual residing in Oklahoma, owner of Matthews Trenching Co., Inc., a key emergency response contractor profiting from system failures.

14. Defendant Rick Thompson is an individual residing in Oklahoma, owner of WYNN CONSTRUCTION CO., INC., an entrenched vendor and political donor profiting from major infrastructure projects.

15. Defendant CAROLLO ENGINEERS, INC. is a corporation doing business in Oklahoma, serving as primary consultant for surge-prone designs, including the Hefner Water Treatment Plant (WTP) retrofit, with knowledge of surge risks.

16. Defendant BLACK & VEATCH CORPORATION is a corporation doing business in Oklahoma, responsible for corrosion control and chemical analysis, providing data on degraded pipes vulnerable to surges.

17. Defendant CROSSLAND HEAVY CONTRACTORS, INC. is a corporation doing business in Oklahoma, primary contractor for the $44 million Hefner Ozone Retrofit, whose operations triggered hydraulic transients.

18. Defendant ARCHER WESTERN CONSTRUCTION, LLC (The Walsh Group) is a corporation doing business in Oklahoma, contracted for surge tower rehabilitation, profiting from offline safety systems during transients.

19. Defendant WYNN CONSTRUCTION CO., INC. is a corporation doing business in Oklahoma, default builder for water projects, profiting from the crisis.

20. Defendant CIMARRON CONSTRUCTION CO., LLC is a corporation doing business in Oklahoma, dominant in emergency repairs with "Unit Price" contracts incentivizing failures.

21. Defendant MATTHEWS TRENCHING CO., INC. is a corporation doing business in Oklahoma, beneficiary of FY2025 breaks via "Tap and Set" deployments.

22. Defendant KRAPFF - REYNOLDS CONSTRUCTION COMPANY is a corporation doing business in Oklahoma, specialized emergency responder bypassing bidding via "Ratification of Emergency."

## FACTUAL ALLEGATIONS

### A. Plaintiff's Personal Timeline and Direct Damages

23. Beginning in or about August 2024, Plaintiff experienced unexplained escalations in monthly water bills from the City/OCWUT, rising from a historical baseline of approximately $67–$75 to over $270 by November 2024, and peaking at $379.42 in

August 2025—a cumulative overcharge exceeding $2,500. Despite diligent self-inspections revealing no household leaks or excessive usage (e.g., no dripping appliances, irrigation, or changes in habits), Plaintiff relied on Defendants' billing representations showing matching "incoming" and "outgoing" water figures, which deterred earlier suspicion of a metering or infrastructure defect.

24. On November 20, 2024, Plaintiff provided formal notice to Defendants via email, reporting bills 4–8 times historical usage with no evident leak and matching sewer records. Defendants' response on November 21, 2024, delayed action by requiring exhaustive self-questionnaires on household and irrigation systems, shifting the burden without scheduling an on-site verification.

25. Bills continued to escalate through early 2025 ($134.43 in December 2024 to $310.52 in April 2025), resulting in over $1,000 in additional overpayments. On April 10, 2025, Plaintiff renewed notice via email, invoking Defendants' "free visit" policy and requesting urgent assistance. Defendants' April 14, 2025, response instructed self-meter testing and professional hiring, followed by a cursory mid-April on-site visit that left a notice claiming "no problem on the city's end" without thorough inspection—negligently missing the defective hookup.

26. In May 2025, Plaintiff hired a licensed plumber at personal expense, who disconnected the city line and confirmed persistent water flow with no household issues, necessitating Defendants' re-involvement. On June 2, 2025, Plaintiff emailed demanding immediate re-inspection, citing evidence of a missing meter (only 3 meters for 4 houses) and a flooded meter hole. Defendants' June 5, 2025, response forwarded the matter to Emergency Services without urgency or timeline.

27. In June 2025, Defendants' team finally re-inspected the property, but only after Plaintiff's direct guidance, revealing that Plaintiff's house was incorrectly hooked to a defective city connection: a flooded and overflowing line causing pressure buildup that burst underground, flooding Plaintiff's crawlspace with water (presumably the source of overbilled usage). This defect directly resulted in mold growth under the home, devaluing the property, requiring remediation, and causing personal injuries including sinus and ear pain from mold exposure.

28. Had Defendants accurately tracked and billed "returned water" (contrary to their representations), conducted proper initial inspections, or responded promptly to notices, Plaintiff could have identified and rectified the defect a full year earlier, avoiding over $2,500 in overbilling, crawlspace flooding, mold infestation, property devaluation (estimated $10,000+ in remediation), and ongoing health effects.

**B. Systemic Negligence and Infrastructure Failures**

29. Defendants' negligence was foreseeable and exacerbated by systemic failures in the City's water infrastructure, as publicly acknowledged: 591 water main breaks in FY2023, rising to 621 in FY2024 and 1,101 in FY2025 (nearly double prior years), attributed to aging pipes, corrosion, and underfunding (e.g., only $10 million allocated for replacements until July 8, 2025 announcement doubling to $20 million, with Director Chris Browning noting on July 14, 2025, that fixes "won't happen overnight"). Early September 2025 rains triggered 40+ additional breaks, underscoring the pattern of unaddressed risks that contributed to Plaintiff's hookup error and damages.

30. The forensic engineering assessment establishes that the catastrophic surge in breaks is driven by hydraulic transients (water hammer) rather than purely environmental factors. These transients are the result of operational decisions, including pump sequencing and valve control logic, under the direct oversight of Defendants Browning, Couch, and OCWUT. The Hefner WTP ozone retrofit (2024-2025), contracted to CROSSLAND HEAVY CONTRACTORS, INC. for $44 million, introduced temporary pumping configurations that triggered damaging surges.

31. Defendants possessed detailed knowledge of surge vulnerabilities for over a decade, via studies from CAROLLO ENGINEERS, INC. on surge analysis, hydraulic modeling, and Hefner-Draper interconnects, and BLACK & VEATCH CORPORATION on corrosion control showing degraded pipes unable to handle surges. Despite SCADA monitoring capabilities, Defendants failed to mitigate these risks, constituting negligence.

32. The "average pressure" defense (e.g., Browning's claim of 88 psi at Hefner) obfuscates transient spikes exceeding 300 psi, as per the Joukowsky equation ($\Delta P = \rho \cdot a \cdot \Delta V$), which pass through residential PRVs, causing damages like those to Plaintiff.

33. Material vulnerabilities include graphitization in pre-1990s ductile iron pipes and fatigue in post-1990s PVC, amplified by transients. The non-linear break rate explosion in FY2025 refutes the "steady-state aging" narrative, pointing to operational changes.

**C. Financial Beneficiaries and Conflicts of Interest**

34. The "Break-Fix" cycle has created a lucrative micro-economy for interconnected entities. OCWUT operates as a proprietary enterprise, shielding the City from liability while funneling funds to vendors.

35. Defendant Couch, as architect of the MAPS era, ensures persistence of surge-prone policies. Browning's ties to Water Environment Federation (WEF), sponsored by Carollo and BLACK & VEATCH CORPORATION, create conflicts in contract awards.

36. CAROLLO ENGINEERS, INC. designed the Hefner system with knowledge of surge risks (e.g., "Surge System Design" for Draper), yet failed to mitigate at Hefner. BLACK & VEATCH CORPORATION provided corrosion data on vulnerable pipes.

37. Contractors like Crossland (Hefner retrofit), Archer Western (surge towers), Wynn, Cimarron (emergency repairs via Unit Price contracts), Matthews Trenching (high-volume work), and Krapff-Reynolds (emergency ratifications) profit directly from failures, incentivized by the system.

38. Political figures: Holt appoints Noble (Cimarron owner) to Board of Adjustment; Stonecipher defends policies; Freeman gatekeeps recommendations. Campaign finance shows support from construction sectors.

39. Prior lawsuits, e.g., Revolution Resources ($235k settlement for stolen water) and Vadnais Trenchless (dismissed without prejudice), demonstrate pattern of liability.

**D. Open Records Act Violations and Spoliation**

40. In September 2025, Plaintiff submitted an ORA request for records including SCADA pressure logs, which the City Attorney's office ignored for four months, violating the "prompt, reasonable access" mandate (51 O.S. § 24A.5). This delay constitutes a denial, risking civil liability and attorney fees.

41. Despite reminders, Defendants failed to forward or respond, potentially spoliating evidence relevant to this lawsuit. Plaintiff intends to escalate to the Attorney General's Public Access Counselor.

## CAUSES OF ACTION

**Count I: Negligence (Against All Defendants)**

42. Defendants owed Plaintiff a duty to maintain safe, accurate water utility services, inspect infrastructure properly, respond promptly to notices, and mitigate known risks like transients and defects.

43. Defendants breached this duty through defective hookups, delayed inspections, misrepresentations of billing accuracy, failure to address systemic breaks (1,101 in FY2025), and operational decisions causing surges.

44. These breaches proximately caused Plaintiff's overbilling ($2,500+), property damage (flooding, mold, $10,000+ remediation), and personal injuries (sinus/ear pain).

45. Individual Defendants acted with willful and wanton negligence, piercing GTCA immunities.

**Count II: Nuisance (Against City, OCWUT, Browning, Couch, Holt, Stonecipher, Freeman)**

46. Defendants' operation of the water system as a proprietary function created a continuous nuisance by allowing defective connections, surges, and flooding, interfering with Plaintiff's property use and enjoyment.

47. This constitutes a taking under Okla. Const. Art. II, § 24, bypassing GTCA caps per Chartney v. City of Choctaw (2019 OK CIV APP 28). Damages include property devaluation and health effects.

**Count III: Breach of Contract (Against City, OCWUT)**

48. As a ratepayer, Plaintiff had an implied contract for accurate billing and safe service. Defendants breached by overbilling based on defective infrastructure and failing to provide services without harm.

**Count IV: Misrepresentation/Fraud (Against City, OCWUT, Browning)**

49. Defendants misrepresented billing accuracy (matching incoming/outgoing figures) and inspection results ("no problem on city's end"), inducing Plaintiff's reliance and delaying remediation.

**Count V: Unjust Enrichment (Against All Contractor Defendants)**

50. Contractors profited from the "Break-Fix" cycle, unjustly enriched by systemic failures they helped perpetuate, at Plaintiff's expense as a ratepayer funding repairs.

**Count VI: Professional Negligence (Against Carollo, BLACK & VEATCH CORPORATION, Individual Engineer Defendants)**

51. As licensed professionals, these Defendants failed to meet standards of care in designing surge-prone systems and analyzing corrosion, with foreseeable harm to Plaintiff.

**Count VII: Violation of Oklahoma Open Records Act (Against City, OCWUT)**

52. Defendants' four-month delay in responding to Plaintiff's ORA request violates 51 O.S. § 24A.5, entitling Plaintiff to declaratory/injunctive relief and attorney fees.

**Count VIII: Conflict of Interest and Civil Conspiracy (Against All Individual and Contractor Defendants)**

53. Defendants conspired through revolving doors, sponsorships, appointments, and contracts to maintain the profitable failure cycle, breaching fiduciary duties and causing harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, for:

a. Compensatory damages exceeding $12,500 (overbilling, remediation, medical costs, lost property value);

b. Punitive damages for willful conduct;

c. Injunctive relief requiring infrastructure repairs, surge mitigation, and prompt ORA compliance;

d. Attorney fees and costs under ORA and GTCA;

e. Pre- and post-judgment interest;

f. Such other relief as the Court deems just.

Plaintiff demands a jury trial.

Respectfully submitted,

Anthony Trupia

605 SE 21st St., Oklahoma City, OK 73129

516-984-0142, Trupiaar@gmail.com

Dated: March 24th, 2026