2026 WL 1239288
Only the Westlaw citation is currently available.
United States Court of Appeals, Seventh Circuit.

Ali BAKHTIARI, Plaintiff-Appellant,
v.
Jeffrey KAHN, et al., Defendants-Appellees.
Ali Bakhtiari, Plaintiff-Appellant,
v.
Jeffrey D. Mays, et al., Defendants-Appellees.

No. 24-2782, No. 24-2787
|
Submitted May 5, 2026 [*]
|
Decided May 6, 2026

Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. Nos. 24-cv-191, 24-cv-7344, Martha M. Pacold, *Judge.*

**Attorneys and Law Firms**

Ali Bakhtiari, Downers Grove, IL, Pro Se.

Brian S. Schwartz, Attorney, Klein Dub & Holleb, Ltd., Highland Park, IL, for Defendants-Appellees in No. 24-2782.

Christopher M. R. Turner, Attorney, Office of the Attorney General, Chicago, IL, for Defendants-Appellees in No. 24-2787.

Before FRANK H. EASTERBROOK, Circuit Judge, AMY J. ST. EVE, Circuit Judge, DORIS L. PRYOR, Circuit Judge

## ORDER

***1** In these consolidated appeals, Ali Bakhtiari argues that the district court abused its discretion by sua sponte dismissing his suits with prejudice as a sanction for his conduct toward opposing counsel. We affirm both dismissals.

In 2024, Bakhtiari sued his former employer, alleging wrongful termination. That same year, he brought a separate federal suit challenging the denial of his unemployment benefits, alleging that the decision violated his due process rights. In the second suit, Bakhtiari named as a defendant Brian Schwartz, the opposing counsel in the wrongful termination case, alleging that Schwartz had conspired with state officials to deny him benefits.

In August 2024, Bakhtiari attempted to serve the complaint on Schwartz. In an email to Schwartz, Bakhtiari stated that he had retained a process server to serve Schwartz and, claiming that Illinois law requires abode service, provided the server with a photograph of Schwartz and all other residents of the home. He asserted that a resident refused to accept service, and he wrote that "the law does not look upon process evaders kindly." He concluded by writing, "Please do not make us trace various addresses affiliated with your family. Accept service of process on your own behalf only." He attached to the email a photo of Schwartz, his wife, and his two minor daughters.

The next month, Bakhtiari filed motions to disqualify Schwartz as counsel in his wrongful termination case, to seal the disqualification motion, and for an emergency hearing. In his motion to disqualify, Bakhtiari attached the same photo of Schwartz and his family but with the daughters' faces redacted, and accused Schwartz of various improprieties, including that he had referred to Bakhtiari as "an Iranian spy." He also asserted that he had received a call from someone who was purportedly Schwartz's wife, who he described as inebriated, and claimed she asked whether "the Iraqians" were coming after their family.

On September 11, 2024, counsel for all parties in both cases appeared before the district court for a hearing regarding the motion to disqualify counsel. Schwartz denied making the comments Bakhtiari attributed to him and rejected the contention that Schwartz's wife had called him. Schwartz relayed to the court the incident involving the process server and the email with the photo of his family. At one point, Schwartz said to the court, "I need you to rein this man in because he's threatening the life of my kids and ... he's been getting progressively more aggressive, and I don't know what his next step is, but I can't wait to find out. ... [H]e has lost his right to be a litigant in this court system."

Bakhtiari responded, defending his use of the process server and maintaining that Illinois law required him to attempt service at Schwartz's residence. He insisted that the process server required photos of the home's residents and that it was the server's private investigator, not Bakhtiari, who had obtained the photo of Schwartz's family. He did not explain why it was necessary to attach the photo to his email to Schwartz or to his motion to disqualify. Schwartz disputed

Bakhtiari's account about the photo, stating that he had spoken with the process server who said Bakhtiari had provided the photo. Bakhtiari countered that he never claimed the process server supplied the image but instead attributed it to a private investigator affiliated with the service company he had retained.

***2** At the conclusion of the hearing, the district court reviewed Bakhtiari's history of litigation misconduct, citing two cases as examples. It first discussed *United States v. Bakhtiari*, 714 F.3d 1057 (8th Cir. 2013), in which Bakhtiari pleaded guilty to obstruction of justice in connection with a prior lawsuit. In that criminal case, Bakhtiari sent an email to opposing counsel containing threatening language and photos of the attorney's family with crosshairs superimposed on their faces. He later showed a rifle to the attorney's law partner, reinforcing the perceived threat.

The U.S. Attorney's Office initiated an investigation, and a grand jury indicted Bakhtiari for sending a threatening communication in interstate commerce. Bakhtiari filed a motion to dismiss the indictment in which he alleged that the federal agents who arrested him had subjected him to torture and sexual abuse. After government counsel notified Bakhtiari that he could be subject to additional charges for making false allegations against the agents, Bakhtiari pleaded guilty to obstruction of justice in violation of 18 U.S.C. § 1512(c)(2). In so doing, he admitted to sending the threatening email and to fabricating the sexual abuse allegations against the federal agents. The district court sentenced Bakhtiari to 51 months' imprisonment.

After reading the relevant portions of the opinion, the court concluded that this history reflected highly concerning conduct involving threats accompanied by images of an attorney's family.

The court then recounted the relevant facts from *Bakhtiari v. Towey*, No. 4:18-cv-256-DDN, 2018 WL 4007869, at *5 (E.D. Mo. Aug. 22, 2018), in which another district court dismissed Bakhtiari's complaint for being malicious, citing his use of disrespectful, mocking language and his admission that he had previously filed multiple malicious lawsuits.

Following the discussion of the two prior cases, the court concluded that Bakhtiari's conduct in the present matter constituted continued abusive litigation. It found the conduct especially troubling in light of his history involving threats against opposing counsel and determined that the motion to disqualify amounted to harassment. Emphasizing that his behavior was "very distressing" given the prior record, the court concluded that Bakhtiari had forfeited his ability to proceed as a litigant and dismissed both cases with prejudice as a sanction.

Bakhtiari appeals the district court's dismissal of his cases. We review the district court's imposition of that sanction for abuse of discretion and its underlying factual findings for clear error. *Martin v. Redden*, 34 F.4th 564, 568 (7th Cir. 2022). Bakhtiari first argues that the court failed to identify its authority to dismiss his suits with prejudice as a sanction. But district courts possess inherent authority to do so where a party "act[s] in bad faith, vexatiously, wantonly, or for oppressive reasons." *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018) (internal quotation omitted). "[O]utright dismissal of a lawsuit ... is a particularly severe sanction, yet is within the court's discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). Bakhtiari identifies no mandate requiring the district court to specify the source of its sanction authority and, given its inherent authority, any misstep in not doing so would be at most harmless error.

Bakhtiari next asserts that the district court should have applied Rule 11 rather than rely on its inherent authority. *See* FED. R. CIV. P. 11. The Supreme Court has explained that "when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Chambers*, 501 U.S. at 50. If the district court had applied Rule 11, Bakhtiari would have been entitled to notice and 21 days to correct or withdraw the motion to disqualify before the opposing party was permitted to file a motion for sanctions. *See* FED. R. CIV. P. 11(c)(2).

***3** But the district court did not abuse its discretion in relying on its inherent authority. The procedure provided in Rule 11(c)(2) is limited to violations of Rule 11(b), which concerns written representations made to the court. *See* FED. R. CIV. P. 11(b) (limited to "a pleading, written motion, or other paper"). Here, the district court based its sanction order on Bakhtiari's motion to disqualify—which falls within the scope of Rule 11(b)—but also on the testimony elicited at the hearing and the emails Bakhtiari had sent to Schwartz—which do not. Where some sanctionable conduct is within the reach of the rules but is "intertwined within conduct that only the inherent power could address," there is no abuse of discretion in resorting directly to the inherent power. *Chambers*, 501 U.S. at 50–51. As the Supreme Court explained, "requiring a

court first to apply Rules and statutes containing sanctioning provisions to discrete occurrences before invoking inherent power to address remaining instances of sanctionable conduct would serve only to foster extensive and needless satellite litigation, which is contrary to the aim of the Rules themselves." *Id.* at 51.

Bakhtiari next contends that the district court abused its discretion because its finding of bad faith was unsupported and not made explicit. While a finding of bad faith is required before imposing dismissal with prejudice, it may be based on the court's assessment of the egregiousness of the conduct and the record as a whole. *Fuery*, 900 F.3d at 463–64. The court may also rely on a litigant's misconduct in prior litigation in making its finding. *Martin*, 34 F.4th at 568.

Here, the record provides ample support for the district court's conclusion that Bakhtiari acted in bad faith. To support its finding, the court relied on Bakhtiari's motion to disqualify counsel attaching a photograph of opposing counsel's minor children. The court also reviewed Bakhtiari's prior email to Schwartz containing similar material and implied threats and heard Schwartz describe his fear for his family's safety. The court further contextualized this conduct by reviewing Bakhtiari's prior litigation history, including cases involving similar threatening communications and abusive filings. The district court was not required to credit Bakhtiari's claim that he attached a photo of Schwartz's family in an email for purposes of service of process or that he included it in a public filing for "full disclosure." *See Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 687 (2021). Given this record, the district court did not clearly err in finding bad faith.

While Bakhtiari is correct that the court was required to make an explicit finding, it was not, as he suggests, required to use the specific phrase "bad faith" so long as it is clear the court "found that a litigant intentionally abused the judicial process in an unreasonable and vexatious manner." *See In re Rimsat, Ltd.*, 212 F.3d 1039, 1047 (7th Cir. 2000). That is precisely what the district court did here, finding that Bakhtiari's conduct constituted "continued abusive litigation" that "use[d] the system to basically harass and abuse opposing counsel" in a manner involving "personal threats." No more needed to be said.

Bakhtiari next argues that the district court was required to consider lesser sanctions prior to dismissing the case with prejudice. But where the circumstances justify dismissal, a court need not explore lesser alternatives. *See Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003). The circumstances here warranted such a penalty: the district court reviewed Bakhtiari's history of abusive litigation conduct, noted the similarities between his previous threat to opposing counsel and the harassment of Schwartz, and heard Schwartz express fear that Bakhtiari was threatening his children. Indeed, we have affirmed dismissal with prejudice as a sanction for a pro se litigant's inappropriate behavior involving implicit threats communicated via email. *See Mohammed v. Anderson*, 833 F. App'x 651, 653–54 (7th Cir. 2020). The court was well within its discretion to impose such a sanction here.

***4** Finally, Bakhtiari argues that the district court was required to provide notice and a hearing prior to imposing the sanction. Its failure to do so, he asserts, violated his right to due process. But "a hearing is not invariably required before sanctions may be imposed." *In re Rimsat*, 212 F.3d at 1046. And in circumstances where a litigant's case is dismissed as a sanction for misconduct, we have held that a district court is not required to conduct a hearing if doing so will not aid its decision. *Martin*, 34 F.4th at 569. Here, it is apparent that the district court heard everything it needed to hear to make its decision to sanction Bakhtiari. And Bakhtiari was given ample opportunity to respond to Schwartz's assertion during the emergency hearing that Bakhtiari had lost his right to litigate before the district court. In any event, he identifies no additional evidence he would have presented that could have altered the outcome. Accordingly, any procedural deficiency was harmless. *See* FED. R. CIV. P. 61.

AFFIRMED

**All Citations**

Not Reported in Fed. Rptr., 2026 WL 1239288

## Footnotes

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.