**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| ANTHONY TRUPIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. CIV-26-2422-R |
| v. | ) | |
| | ) | (Removed from the District Court |
| CITY OF OKLAHOMA CITY, et al., | ) | of Oklahoma County, |
| | ) | Case No. CJ-2026-515) |
| Defendants. | ) | |

# PLAINTIFF'S SUR-REPLY IN OPPOSITION TO THE MOTION FOR SANCTIONS (DOC. 41), RESPONDING TO THE REPLY OF DEFENDANTS ARCHER WESTERN CONSTRUCTION, CITY OF OKLAHOMA CITY, AND OKLAHOMA CITY WATER UTILITIES TRUST (DOC. 43)

Plaintiff Anthony Trupia submits this sur-reply to the Reply in Support of Motion for Sanctions (Doc. 43) filed by Defendants Archer Western Construction ("Archer Western"), the City of Oklahoma City ("City"), and the Oklahoma City Water Utilities Trust ("OCWUT").

## INTRODUCTION

The reply drops the motion's legal theory. It quietly rewrites the motion's descriptions of its own authority. And it offers a new exhibit that says the opposite of what the movants cite it for. What is left is a request that the Court do what the movants never did themselves: tell Plaintiff that they did not like his emails.

The reply identifies no threat, no violated order, no disrupted proceeding, and no bad faith. It identifies four things: Plaintiff criticized defense counsel's work, said he would discuss this public case in public, served Rule 11 motions, and said he is preparing

bar complaints. All four are lawful. The last two are the procedures the law provides for holding lawyers to account.

**This motion is retaliation. It was filed seven days after the City's counsel was served with a Rule 11 motion over her remand briefing, and it is nothing more than a plea for special treatment from the Court. Before they filed it, not one of the movants' lawyers ever told Plaintiff that anything he wrote was abusive, harassing, threatening, or a personal attack, and not one asked him to change the tone of a single communication. They went to the Court instead.**

## I. THE MOVANTS HAVE DROPPED RULE 11, AND WHAT THEY PUT IN ITS PLACE CONFIRMS THE RETALIATION.

The reply says that "[d]espite Plaintiff's mischaracterizations, this is not a Rule 11 Motion." (Doc. 43 at 1.) The characterization is the motion's own. The motion invoked Rule 11(b)(1) and the "objective-reasonableness standard," argued that Plaintiff's conduct "is objectively unreasonable under the applicable standard," and called it "precisely the type of harassment that Rule 11 seeks to deter." (Doc. 41 at 2.) Plaintiff showed that Rule 11 reaches only papers presented to the Court and that the movants served no safe-harbor motion. (Doc. 42 at 6–8.) The movants now concede the point: "Defendants do not contend that the emails themselves violate Rule 11." (Doc. 43 at 2.)

In Rule 11's place, the reply offers this: "Plaintiff's use and threatened use of litigation procedures as part of abusive communications is relevant to whether his broader course of conduct constitutes bad-faith abuse." (Id.) The "litigation procedures" are the Rule 11 motions Plaintiff served on October 23, 2026, with the twenty-one days to cure

that Rule 11(c)(2) requires (Doc. 42, Exs. 3–5), and the bar complaints Plaintiff said on November 2 that he is preparing (Doc. 43-1 at 1). The movants are asking the Court to treat Plaintiff's use of the procedures for challenging lawyers' conduct as proof of his bad faith. That is retaliation, in the movants' own words.

The reply opens the same way: "Tellingly, Plaintiff immediately responded to the Motion for Sanctions by threatening bar complaints against defense counsel." (Doc. 43 at 1.) A litigant hit with a sanctions motion, without warning, by lawyers he has accused of misstating the law, may say that he will report their conduct to the body that regulates it. The First Amendment protects "the right of the people . . . to petition the Government for a redress of grievances," U.S. Const. amend. I, and "the right to petition extends to all departments of the Government," California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972). A grievance to the Oklahoma Bar Association, which investigates attorney conduct for the Supreme Court of Oklahoma, is such a petition. The movants concede that they do not seek to stop Plaintiff from "pursuing legitimate remedies." (Doc. 43 at 6.) Yet they call his use of one an escalation. (Id. at 2.)

The November 2 email says that Plaintiff is "working on bar complaints," that the motion is "obviously retaliatory and frivolous," that it "stated no law or rule I broke," and that in counsel's position Plaintiff would withdraw it. (Doc. 43-1 at 1.) Every word of that is true. None of it is a threat.

## II. PLAINTIFF DISPUTES EVERY CHARACTERIZATION OF HIS EMAILS, AND THE MOVANTS STILL OFFER NO EVIDENCE FOR ANY OF THEM.

### A. Sending the emails is undisputed. What the movants call them is not.

The reply's heading announces that "Plaintiff Does Not Dispute the Communications Underlying Defendants' Motion." (Doc. 43 at 2.) Plaintiff sent the emails. He disputes, and has disputed from the start, every label the movants put on them. (Doc. 42 at 5, 10–13.) He declared under penalty of perjury that "[n]othing I wrote to counsel threatened, or was intended to convey, violence or physical harm to anyone," and that before the motion was filed "no attorney for any defendant told me, orally or in writing, that my emails were abusive, harassing, or threatening, or asked me to change their tone." (Doc. 42, Ex. 2 ¶¶ 5–6.) The reply contradicts neither statement. No movant and no lawyer has filed a declaration, with the motion or the reply, describing harassment, intimidation, fear, disruption, or any other effect of anything Plaintiff wrote. The words "harassing," "threatening," "abusive," and "personal attacks" appear only in the movants' briefs. "Factual statements or documents appearing only in briefs shall not be deemed to be a part of the record in the case." LCvR7.1(i).

### B. What the reply calls "admitted" is true.

The reply says Plaintiff admitted telling counsel that they "screwed up" removal and that he was "not your babysitter." (Doc. 43 at 3.) Both statements were accurate. Plaintiff's motion to remand and his replies set out the defects in removal. (Docs. 17, 37–39.) And the "babysitter" line introduced a list of seven defendants that had not filed the disclosure statements the rules require, Archer Western among them. (Doc. 41-4 at 1.)

Archer Western had appeared in this Court on September 21, 2026, without the disclosure statements that Fed. R. Civ. P. 7.1 and LCvR7.1.1 require with a party's first filing. (Docs. 9, 10.) It filed both the day after Plaintiff's email, on October 2, 2026. (Docs. 19, 20.) Archer Western now seeks fees from Plaintiff over the email that told it what the rules required.

**C. The so-called escalation is Plaintiff's answer to the motion itself.**

The reply calls Plaintiff's November 2 email an escalation of "that pattern," and says it shows "why sanctions and an order requiring Plaintiff to conduct himself with civility are necessary." (Doc. 43 at 1–2.) Plaintiff sent that email three days after the movants filed this motion without any warning. It answers the motion. A party cannot file a motion without notice, receive the predictable response that the motion is retaliatory and will be reported, and then offer that response as proof that the motion was needed.

**D. Before filing, the movants never objected to anything Plaintiff wrote.**

The movants' new Exhibit 1 reproduces Plaintiff's emails from August 31 through November 2, 2026. (Doc. 43-1.) It contains no reply from any of them. The only request about Plaintiff's correspondence that any movant's lawyer has ever made, anywhere in the record, is Ms. Goff's August 18 email, sent while the case was in state court. She asked Plaintiff to "concisely communicate with those City employees attempting to respond to your requests, rather than sending me these lengthy grievances." (Doc. 42, Ex. 7.) The "grievances" were Plaintiff's objections to the City's refusal to produce public records. (Id.; Doc. 42, Ex. 6.)

The reply says a communications order is "particularly appropriate given Plaintiff's argument that no court has previously directed him to refrain from such conduct." (Doc. 43 at 6.) Plaintiff's point was broader, and the reply does not answer it: no lawyer had ever objected to his correspondence or asked him to change its tone either. (Doc. 42 at 5, 13–14; Doc. 42, Ex. 2 ¶ 5.) Lawyers who believed they were being abused, harassed, or threatened would have said so. These lawyers said nothing until one of them was served with a Rule 11 motion. Then they asked the Court for a sanction.

## III. THE LAW DOES NOT REQUIRE PLAINTIFF TO RESPECT OPPOSING COUNSEL.

Plaintiff owes defense counsel no respect as a matter of law. The reply identifies no law that says otherwise.

**1. The Standards of Professionalism do not apply to him.** The movants concede this. They now say they cite Section 2.7 "not as binding rules for Plaintiff, but to illustrate conduct unacceptable from counsel." (Doc. 43 at 3; see Doc. 41 at 7.) Plaintiff is not counsel. The part of Section 2.7 the reply stresses, that lawyers should "impress [it] upon [their] client" (Doc. 43 at 4), proves the point. It tells lawyers how to conduct themselves and what to tell their own clients. It creates no duty that a party owes to the lawyers on the other side.

**2. The inherent power is not a code of manners.** No rule, statute, or order requires a litigant to show regard for his adversaries, and the reply cites none. The inherent power protects the Court's own process. It is the power of courts "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link

v. Wabash R.R. Co., 370 U.S. 626, 630–31 (1962). It reaches a party who "has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons,'" Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991), and "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion," id. at 44. Every issue Plaintiff raised with counsel, he brought to the Court by proper motion: remand (Doc. 17), a stay the Court granted (Docs. 18, 40), and replies identifying each misstatement in the remand responses (Docs. 37–39). The reply points to no proceeding Plaintiff delayed, no order he disobeyed, and no filing he made in bad faith.

**3. Plaintiff has asked for no latitude.** The reply argues at length that Plaintiff's experience and pro se status earn him no extra latitude. (Doc. 43 at 3–5.) Plaintiff never asked for any. He asks that the same law apply to him as to everyone: no litigant, represented or not, may be sanctioned for impoliteness toward opposing counsel absent bad faith. The reply's claim that Plaintiff "routinely files lawsuits" (id. at 4) has no record citation and is beside the point.

**4. The First Amendment protects what Plaintiff said.** "[O]ne of the prerogatives of American citizenship is the right to criticize public men and measures—and that means not only informed and responsible criticism but the freedom to speak foolishly and without moderation." Cohen v. California, 403 U.S. 15, 26 (1971) (quoting Baumgartner v. United States, 322 U.S. 665, 673–74 (1944)). "[I]t is nevertheless often true that one man's vulgarity is another's lyric." Id. at 25. Two of the movants are public bodies, in a case about a public water system and a police encounter with a citizen. "There is no question that speech critical of the exercise of the State's power lies at the

very center of the First Amendment." Gentile v. State Bar of Nevada, 501 U.S. 1030, 1034 (1991) (opinion of Kennedy, J.). Plaintiff shows this Court the respect it is owed. The movants are not the Court.

## IV. THE MOVANTS' COMPLAINTS ARE ABOUT TONE. PLAINTIFF'S ARE ABOUT THE LAW.

The movants want the Court to stop Plaintiff's criticism. The conduct he criticizes is conduct the law forbids.

**1. Withholding public records.** Under Oklahoma law, "[a]ll records of public bodies and public officials shall be open to any person for inspection, copying, or mechanical reproduction during regular business hours." 51 O.S. § 24A.5. Access to those records "shall not be denied because a public body or public official is using or has taken possession of such records for investigatory purposes or has placed the records in a litigation or investigation file." 51 O.S. § 24A.20. Counsel who signed this motion told Plaintiff in writing that paragraphs 17 through 38 of his records request would be "treated as Requests for Production" to which "the City is not yet required to respond." (Doc. 42, Ex. 6.) The City has conceded that body-worn camera footage of the June 6, 2026 encounter exists, and it has refused to release it. (Doc. 1-1 ¶ 115.) Neither the footage nor the records in paragraphs 17 through 38 have been produced. (Doc. 42, Ex. 2 ¶ 8.) When Plaintiff pressed for them, counsel asked him to stop "sending me these lengthy grievances." (Doc. 42, Ex. 7.)

**2. A statement to this Court without evidentiary support.** Rule 11(b)(3) requires that "the factual contentions have evidentiary support." The state court's August

10, 2026 minute lists the defendants it dismissed that day. Don Noble, Cimarron Construction, Rick Thompson, and Wynn Construction are not among them. (Doc. 1-2 at 10.) The City told this Court the same thing in its notice of removal: "the remaining parties include Don Noble, Rick Thompson, Crossland Contractors, Wynn Construction and Cimarron Construction," whose motions to dismiss had no "final disposition." (Doc. 1 ¶ 6, at 4.) Twelve days later, Archer Western's counsel told this Court that the state court "heard and orally granted the Motions to Dismiss on August 10, 2026," and that Plaintiff "refused to sign off on a formal written Order for the dismissal of Archer Western, as well as Don Noble, individually and as the owner of Cimarron Construction, . . . Rich Thompson and Wyn Construction Co., Inc." (Doc. 9 at 1–2.) Nothing in the record supports that statement as to Noble, Cimarron, Thompson, or Wynn, and the City's own notice of removal contradicts it. Archer Western then used it to tell this Court that "Plaintiff has repeatedly flouted procedural rules," without naming a rule. (Id. at 9.) The same counsel now asks the Court to sanction Plaintiff for his tone.

**3. The remand briefing.** The Rule 11 motions Plaintiff served on October 23 identify, with quotations and pinpoint citations, statements in the defendants' remand responses that their own authority does not support. (Doc. 42, Exs. 3–5.) The time to withdraw or correct those statements under Rule 11(c)(2) runs through November 13, 2026.

**4. This motion.** Part V shows that the motion's charge about "fraud and corruption" and "the Court itself" is contradicted by the movants' own new exhibit. Part

VI shows that the reply rewrote the motion's descriptions of Bob Moore and Onvoy without saying so.

Plaintiff has said plainly what he thinks of this conduct. That is not harassment. It is an accurate description of the record.

## V. THE NEW EXHIBIT CONTRADICTS THE CHARGE IT WAS OFFERED TO SUPPORT.

The motion told the Court that Plaintiff researched counsel "to manufacture allegations of 'fraud and corruption' extending beyond the litigants to counsel and to the Court itself," and compiled memoranda "analyzing the alleged connections between counsel, Judge Heaton, Judge Andrews." Its only support was the Counsel Affiliation Memo. (Doc. 41 at 5.) Plaintiff showed that the memo does not mention Judge Heaton, does not use the words "fraud" or "corruption," and says nothing about this Court. (Doc. 42 at 6, 15.) The reply does not dispute any of that. Instead, it offers a second document, The Nexus Register, as containing "additional references underlying part of Defendants' characterization." (Doc. 43 at 5; Doc. 43-5.)

The Nexus Register mentions Judge Heaton three times. It says that "Judge Heaton is a Rotarian whose club is not publicly identified." (Doc. 43-5 at 2.) Its table lists "Judge Joe Heaton" as a "member, club unidentified" of "Rotary International." (Id. at 6.) And its section titled "The Judges — What Connects, and What Does Not" states that "Judge Heaton is a Rotarian of unidentified club and a former legislator and federal prosecutor; the two Inns of Court are the one plausible shared room between the two judges, and no documented tie between them exists." It concludes: "Both judges connect to this case's

world through charities, bar bodies, and schools — not through parties, contractors, or money." (Id. at 4.) The words "fraud" and "corruption" appear nowhere in it.

So the document the movants now offer to show that Plaintiff accused "the Court itself" of corruption says, in so many words, that the judges are not connected to the parties, the contractors, or the money. And like the memo, it went to one person. The reply identifies its transmittal as Plaintiff's August 13, 2026 email to Ms. Goff. (Doc. 43 at 5.) That email was addressed to her alone, nearly four weeks before removal, while the case was in state court. (Doc. 42, Ex. 1; Doc. 42, Ex. 2 ¶¶ 2–3.) The movants' own authority holds that conduct "between the parties in relation to their litigation in Oklahoma state court" lacks a sufficient connection to a federal proceeding to support an inherent-power sanction. Trupia v. Bob Moore Enters., L.L.C., No. 25-6130, 2026 WL 1506611, at *3 (10th Cir. May 29, 2026) (Doc. 41-8 at 3).

The reply also concedes that "the exhibits to Defendants' Motion were not exhaustive of Plaintiff's communications." (Doc. 43 at 5.) In other words, the movants ask the Court to weigh communications they have not put before it. The Court cannot. Whatever the movants have not filed is not part of the record, and their descriptions of it in a brief do not make it so. LCvR7.1(i).

## VI. THE REST OF THE OUT-OF-CASE MATERIAL DOES NOT SUPPORT THE MOTION.

**1. Bob Moore and Onvoy.** The reply now concedes that "[t]he basis for relief remains Plaintiff's admitted conduct in this case." (Doc. 43 at 5.) By the movants' own account, then, these two decisions from Plaintiff's other cases are not a basis for anything.

They are in the record only to color the Court's view of Plaintiff. They are also described differently than before, without acknowledgment. The motion said the Tenth Circuit in Bob Moore was "characterizing Trupia's conduct as 'abusive litigation conduct'"; the reply now says the court was "recounting allegations." (Doc. 41 at 6; Doc. 43 at 5.) The reply still omits that the Tenth Circuit denied that sanctions motion. Bob Moore, 2026 WL 1506611, at *3 ("Accordingly, we deny BME's motion for sanctions."). The motion said the Onvoy order was entered "in connection with Plaintiff's frivolous sanctions filing"; the reply drops "frivolous." (Doc. 41 at 6; Doc. 43 at 5.) The reply still omits what the order was about. Its "hard . . . to reach any other conclusion" sentence ends: "given its repeated admonishments to Plaintiff regarding the page limit for his responses." (Doc. 41-9 at 2.) The order concerns the length of briefs. It says nothing about correspondence with counsel.

**2. Singer.** The reply asks the Court to take "that preliminary step now," meaning the warning the Singer court gave before dismissing that case. (Doc. 43 at 3.) That warning followed "hundreds of threatening and harassing emails" to defense counsel, "some of which threatened sexual violence against counsel"; threats that counsel reported to the police; felony stalking and intimidation charges; a no-contact order; and counsel's own request for a conference with the magistrate judge. Singer v. Indianapolis Metro. Police Dep't, No. 1:25-cv-00870-JRO-MKK, 2026 WL 2209676, at *1*, 3 (S.D. Ind. July 31, 2026) (Doc. 41-3 at 1, 3). The Singer court praised counsel's earlier silence as "professional restraint," which ended when the plaintiff "escalated his correspondence to threats of violence." Id. at *7 (Doc. 41-3 at 6). Nothing Plaintiff wrote threatened

violence, and no movant claims it did. (Doc. 42, Ex. 2 ¶ 6.) The reply answers that "physical violence is not the threshold." (Doc. 43 at 3.) But the case the movants rely on shows what the "preliminary step" was a response to, and this record is nowhere near it. Nor is a warning a neutral step. It would be a judicial finding that Plaintiff's lawful criticism of opposing counsel was misconduct, made without a finding of bad faith and on no sworn evidence.

**3. Duplicate exhibits and reargument.** The reply re-files Singer, Bob Moore, and the Onvoy order as Exhibits 2, 3, and 4 (Docs. 43-2, 43-3, 43-4). Each is already in the record as an exhibit to the motion (Docs. 41-3, 41-8, 41-9). "No response or reply brief shall include an exhibit or attachment that is already included with the motion under consideration." LCvR7.1(m). And reply briefs "shall not be used to reargue the points and authorities included in the opening brief." LCvR7.1(h). The reply's Parts III and IV do just that.

## VII. THE RELIEF REQUESTED REMAINS UNAVAILABLE.

**1. The sanction is still unspecified.** The reply says the relief was "clearly identified." (Doc. 43 at 6.) But its own conclusion asks the Court to "impose such sanctions as the Court determines appropriate under its inherent authority," on top of the communications order, the warning, and fees. (Id. at 7.) That is the same unspecified sanction Plaintiff pointed out in his response. (Doc. 42 at 16.) An inherent-power sanction requires "a specific finding" of bad faith and "should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." Roadway Express, Inc. v. Piper, 447 U.S. 752, 767 (1980).

**2. The communications order is now vaguer.** The reply describes the order it wants as requiring that Plaintiff's communications "be professional, address legitimate litigation matters, and contain no abuse, harassment, threats, or personal attacks." (Doc. 43 at 6.) None of those terms is defined. An order restricting a party's communications about pending litigation must rest on "a clear record and specific findings," and must "limit[] speech as little as possible." Gulf Oil Co. v. Bernard, 452 U.S. 89, 101–02 (1981). Vague limits on speech carry an "impermissible risk of discriminatory enforcement," because "history shows that speech is suppressed when either the speaker or the message is critical of those who enforce the law." Gentile, 501 U.S. at 1051. These movants have already shown how they would apply such terms: they call accurate criticism abuse, Rule 11 notice harassment, and a bar grievance an escalation. An order in their terms would let them come back to the Court every time Plaintiff criticizes them. That is what this motion was filed to get.

**3. Fees.** Fees under the inherent power require bad faith. Chambers, 501 U.S. at 45–46. The reply identifies none. The fees the movants seek are the cost of a motion that nothing Plaintiff did required.

**4. Notice and hearing.** If the Court is inclined to consider any sanction, warning, or limit on Plaintiff's communications, Plaintiff asks for "fair notice and an opportunity for a hearing on the record" first. Roadway, 447 U.S. at 767.

Finally, a reply that asks the Court to police Plaintiff's professionalism certifies that it was "served via ECF" on November 6, 2026, three days before it was filed; lists

the City's counsel's email as "Katie.goff@okc.com"; and misnames one of the movants as the "Oklahoma Water Utilities Trust." (Doc. 43 at 1, 8–9.)

## CONCLUSION

The reply confirms that the motion has no basis in Rule 11, shows no bad faith, and rests on characterizations that the movants' own exhibits contradict. Plaintiff respectfully requests that the Court deny the Motion for Sanctions (Doc. 41) in its entirety, including the requests for an unspecified sanction, a communications order, a warning, and fees and costs. If the Court is inclined to consider any of that relief, Plaintiff requests notice and a hearing on the record first.

Respectfully submitted,

Anthony Trupia, Plaintiff Pro Se
605 SE 21st Street
Oklahoma City, OK 73129
(516) 984-0142
trupiaar@gmail.com

Dated: November 10, 2026